United States Courts
Southern District of Texas
FILED

*October 17, 2025*

Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| vs. | § CRIMINAL NO. **4:25-cr-00550** |
| | § |
| LEAH YVETTE KNIGHT, | § |
| | § |
| Defendant. | § |

## CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

### COUNT ONE
**(Conspiracy, 18 U.S.C. § 371)**

**A.    INTRODUCTION**

At times material to this Information:

1. Defendant LEAH YVETTE KNIGHT and others known and unknown to the United States Attorney conspired together, and with intent to defraud, participated in a scheme and artifice to defraud the Small Business Administration (SBA) and Cache Valley Bank.

2. KNIGHT was a resident of Richmond, Texas, and had formed a non-profit corporation under the name Family for Life Ministry, Inc. The corporation had a bank account at JP Morgan Chase Bank.

3. Cache Valley Bank was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation.

**B.    THE PAYCHECK PROTECTION PROGRAM**

4. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small

1

businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

5. On or about March 27, 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted to provide emergency financial assistance to the millions of Americans suffering adverse economic effects caused by the COVID-19 pandemic. The CARES Act established several new temporary programs and provided for expansion of others, including programs created and/or administered by the SBA.

6. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). The PPP provided for government-backed loans designed to incentivize small businesses to keep their workers on the payroll by providing funds for up to 8 weeks of estimated payroll costs, including benefits.

7. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the applicant (through its authorized representative) was required to state, among other things: (a) its average monthly payroll expenses; and (b) its number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, the applicant was required to provide documentation showing its

payroll expenses. The applicant was also required to certify that the business was in operation on February 15, 2020, and had employees or paid independent contractors.

8. A business's PPP loan application was received and processed, in the first instance, by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

9. PPP loan proceeds were required to be used by the business on certain permissible expenses: payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

**C.  THE CONSPIRACY**

10. Beginning no later than in or about February 2021, and continuing through in or about March 2021, within the Southern District of Texas and elsewhere, Defendant,

**LEAH YVETTE KNIGHT,**

did knowingly combine, conspire, confederate, and agree with co-conspirators known and unknown to commit the following offense against the United States:

> to knowingly devise and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign

commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343 (wire fraud).

**D.    MANNER AND MEANS OF THE CONSPIRACY**

11.    In furtherance of this conspiracy and to effect the objects thereof, the Defendant and other co-conspirators used the following manner and means, among others:

a.    Co-conspirators would submit and cause to be submitted fraudulent PPP loan applications to induce lenders to approve loans to businesses that did not qualify to receive loans, or to induce lenders to approve loans in amounts above what the businesses were entitled to receive.

b.    Some fraudulent PPP loan applications submitted by co-conspirators were for businesses with existing operations, employees, and payroll. On the applications, co-conspirators would inflate the number of employees and monthly payroll of the businesses, to increase the loan amounts that the businesses would receive.

c.    Some fraudulent PPP loan applications submitted by co-conspirators were for businesses with no existing operations, employees, and payroll. On the applications, co-conspirators would falsely represent that the businesses had employees and monthly payroll.

d.    Co-conspirators would submit and cause to be submitted fraudulent documents to substantiate their false statements to lenders regarding operations, number of employees, and monthly payroll of businesses seeking PPP and EIDL loans. These documents would include, but are not limited to, fake IRS tax forms.

  e. Co-conspirators used PPP loan funds in part to pay for unauthorized and non-business expenses, including but not limited to house payments, car payments, and kickback payments.

**E.  OVERT ACTS**

12. On or about February 26, 2021, Cache Valley Bank received a PPP application on behalf of Family for Life Ministry Inc. The application had been completed and submitted by Person C with KNIGHT's knowledge and awareness. The PPP application falsely represented that Family for Life Ministry had 15 employees and an average monthly payroll of $116,666. The PPP application was supported with a falsified IRS Form 940 and a falsified IRS Form 941.

13. On or about March 8, 2021, Cache Valley Bank approved Family for Life Ministry for a PPP loan in the amount of $291,660. KNIGHT used these PPP funds for unauthorized and non-employment purposes, including but not limited to purchasing a $110,000 cashier's check on March 11, 2021, made payable to one of Person C's business entities. This cashier's check constituted Person C's "fee" for assisting KNIGHT with the fraudulent PPP application to Cache Valley Bank.

*All in violation of Title 18, United States Code, Section 371.*

**NOTICE OF FORFEITURE**
**(18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c))**

14. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the United States gives notice to the Defendant that in the event of her conviction of the offense charged in Count One of this Criminal Information, all property, real

or personal, which constitutes or is derived from proceeds traceable to such offense, is subject to forfeiture.

### *Property Subject to Forfeiture*

15. The property subject to forfeiture includes, but is not limited to, the following:

   a. The real property, including all improvements and appurtenances, located on Blue Leaf Drive, Richmond, Texas, and legally described as CANYON LAKES AT THE BRAZOS SEC 1, BLOCK 2, Lot 1.

### *Money Judgment and Substitution of Assets*

16. Defendant is notified that, upon conviction, the United States will seek a money judgment against her. In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exist, the United States will seek to forfeit any other property of the Defendant up to the amount of the money judgment.

NICHOLAS J. GANJEI
United States Attorney

By: _____
Stephanie Bauman
Shirin Hakimzadeh
Assistant United States Attorney
713-567-9000